# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SCOTLAND WILLIAMS, #276777,       *

Plaintiff,       *

v.       *       Civil Action No. ELH-17-2003

COMMISSIONER OF CORRECTION,       *
WARDEN FRANK BISHOP,
      *
Defendants.
      ***

## MEMORANDUM OPINION

The self-represented plaintiff, Scotland Williams, an inmate incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, brings this civil action pursuant to 42 U.S.C. §1983 against two defendants: the Commissioner of Correction and Warden Frank Bishop. ECF 1.[1] Williams alleges that he was "wrongly charg[ed] photocopy fees," in violation of his due process rights. *Id.* He seeks preliminary and permanent injunctive relief, compensatory damages in the amount of $30.27, and punitive damages in the amount of $1,000. *Id.* at 12-13.

On November 29, 2017, defendants moved to dismiss or, in the alternative, for summary judgment. ECF 11. The motion is supported by a memorandum of law (ECF 11-1) (collectively, the "Motion") and several exhibits. On February 1, 2018, Williams filed an opposition.[2] ECF 16. No reply was submitted.

Upon review of the record, exhibits, and applicable law, the court deems a hearing

---

[1] Plaintiff did not include the name of the Commissioner of Correction. However, defendants identify the Commissioner as Dayena Corcoran. *See* ECF 11 at 1.

[2] The Court granted plaintiff's request for an extension of time in which to respond. ECF 13; ECF 14.

unnecessary. *See* Local Rule 105.6 (D. Md. 2016). Defendants' motion, construed as a motion for summary judgment, shall be granted.

## I. Background

On April 1, 2016, $50.00 was deposited into Williams' inmate account at NBCI. ECF 1 at 5; ECF 11-2 at 1.[3] On the same date, NBCI debited $30.27 from Williams' account as "Payment for PRIOR DEBT on 2014-08-01-08." ECF 11-2 at 1. On June 1, 2016, when Williams received his trust activity statement from NBCI, he learned that he had been charged $30.27. ECF 1 at 5.

It is undisputed that the debt of $30.27 stemmed from photocopy fees incurred by Williams between April 15, 2009 and September 25, 2015, when he was indigent and lacked the ability to pay for the photocopies. ECF 1 at 5; ECF 1-1 at 3; ECF 11-1 at 2; ECF 11-2. Cheryl Lindner, the Fiscal Account Clerk Manager at NBCI, explained on September 22, 2016, ECF 11-3:

> The charges resulted in a negative "reserve" balance, which is considered debt, due to insufficient funds in his Active balance to pay the charges. His account was indigent at the time the charges occurred, however, vouchers are submitted by Medical for the Medical copies and Case Management and housing unit staff for the copies and other charges. The accounts are not checked for indigency by Inmate Accounts prior to posting the charges.

Williams states that although he "always informed staff that he was indigent and needed the photocopies for court, he was still required to sign a voucher in which he agreed that the [Division of Correction] could charge him for the copies." ECF 1 at 6. According to Williams, if he refused to sign the voucher, he would not have been able to obtain the photocopies. *Id.* But, he maintains that he signed the vouchers after being "advised . . . that if he had no money in his account he could not be charged." *Id.*

---

[3] All citations reflect the electronic pagination.

2

The Department of Public Safety and Correctional Services ("DPSCS") issues Directives that spell out policies governing photocopy fees. *See* ECF 11-4. DPSCS also has a Medical Records Manual that regulates when an inmate, indigent or otherwise, can be charged for photocopies of medical records. ECF 11-5. Photocopies are available to inmates involved in legal or administrative proceedings. ECF 11-4 at 2. Inmates are charged $0.15 per copy for all but medical records. ECF 11-4 at 3. Photocopies of medical records are available to indigent inmates for court-related activities, at the rate of $0.20 per page. ECF 11-5 at 5. However, such fees are waived for indigent inmates, so long as "the photocopies are reasonably necessary" for legal proceedings. ECF 11-4 at 2. "[A]n inmate who in the previous 30 days . . . has not had at least $4.00 in his/her active and commissary accounts" is considered indigent. *Id.* at 1.

On June 13, 2016, less than two weeks after Williams discovered the recoupment by DPSCS, he filed a request for an administrative remedy procedure ("ARP"). ECF 11-6. In his ARP, Williams claimed that because photocopy fees are waived for indigent inmates, the amount of $30.27 that was debited from his account for copies made from 2009 to 2015 was "unjustified and contrary to [DPSCS policy]." *Id.* Thus, he sought reimbursement of the $30.27. *Id.* Williams' ARP was dismissed as untimely. *Id.* Williams then appealed to the Commissioner of Correction on June 29, 2016, claiming that he filed the ARP within the established time frame. ECF 11-7 at 2. Subsequently, the appeal was dismissed because the Commissioner deemed his ARP untimely. *Id.*

Thereafter, on August 8, 2016, Williams filed a grievance with the Inmate Grievance Office ("IGO"), asserting that his ARP was timely filed. ECF 11-7 at 1; ECF 1-1 at 1. According to Russell A. Neverdon, Sr., Executive Director of the IGO, Williams' grievance was referred to the Maryland Office of Administrative Hearings ("OAH"). ECF 11-8.

3

Administrative Law Judge ("ALJ") Robert Levin conducted a hearing on November 17, 2016, via videoconference. ECF 1-1 at 2; ECF 11-8 at 1.

In a Decision and Order dated January 11, 2017, ALJ Levin denied and dismissed the grievance. ECF 1-1. He concluded "that the DOC's action of recouping, when [Williams] accumulated sufficient funds in his account, the $30.27 it had advanced on behalf of [Williams] for [Williams'] photocopies, was not arbitrary and capricious, or inconsistent with the law. COMAR 12.07.01.08A(c); 12.07.01.08C(2)."

Williams could have sought judicial review in a Maryland circuit court. *See* Md. Code (2017 Repl. Vol.), § 10-210(b) of the Correctional Services Article. But, there is no indication that he did so. However, he was not required to seek judicial review in a Maryland court before lodging this suit. *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002).

## II.  Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x. 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th

Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, [he] cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Gordon v. CIGNA Corp.*, 890 F.3d 463, 478 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd,* 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before

denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x. at 638.

Plaintiff has not filed an affidavit under Rule 56(d), nor has he indicated that discovery is necessary. Moreover, ALJ Levin heard testimony and received exhibits (ECF 1-1 at 2-3), and Williams would be familiar with that evidence, as he participated at the hearing. Therefore, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the

7

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank*

*v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Judd*, 718 F.3d at 313. On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

As indicated, Williams claims that the defendants deprived him of due process by wrongly recouping photocopy fees after the fees had been waived due to his indigence. ECF 1 at 11. Williams also contends that defendants did not meet constitutional due process standards when they failed to notify inmates of "the new medical records policy that increased the photocopy fees for medical records." *Id.*

In their Motion, defendants argue that (1) Williams' allegations regarding personal property do not state a constitutional claim; (2) Williams has not alleged facts against defendants; (3) defendants did not personally participate in the alleged wrongdoing; and (4) defendants are entitled to qualified immunity. ECF 11-1. In his response, Williams argues that (1) he has adequately presented a due process claim; (2) defendants failed to address his claim regarding the lack of notice of photocopy costs for medical records; (3) defendants can be found liable due to their "tolerance and acquiescence" in the due process violations; and (4) there are genuine issues of material fact in dispute. ECF 16 at 8-21.

To bring a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish the violation of a constitutional right or federal law. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). To the extent that Williams is claiming a violation of due process under the Fourteenth Amendment, his claim is unavailing. The fact that $30.27 was deducted from Williams' account, or that Williams was charged $0.20 per page for photocopying, rather than $0.15 per page, amounts to no more than a deprivation of Williams' property interest in his prison account. Thus, his claim at best is akin to one of lost or stolen property. In such cases, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986);

*see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The right to seek damages and injunctive relief in a Maryland court constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4]

Here, Williams was allowed to make photocopies of his legal and medical documents from April 15, 2009 to September 25, 2015. Because Williams was indigent at the time he made the copies, he was not charged a copying fee, as mandated by the DSPCS Directives and the Medical Records Manual. He received the photocopies, without charge, after signing vouchers upon being "advised . . . that if he had no money in his account he could not be charged." However, once Williams had money in his account on April 1, 2016, the DOC deducted $30.27 to compensate for the cost of the photocopies previously provided to Williams. Thereafter, Williams filed his ARP, appealed from the disposition of that ARP, and further appealed to the IGO. Although he was not successful, Williams clearly was afforded sufficient due process.

Williams has not identified the correctional officer(s) who provided him with allegedly erroneous information as to the obligation to repay once he was no longer indigent. Notably, he has not alleged that it was the defendants named in this suit. Therefore, he has failed to state a claim against them. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation).

Moreover, the doctrine of respondeat superior does not apply to actions under 42 U.S.C. § 1983. *See Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

---

[4] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in State courts also applies to cases of lost or stolen property, given *Juncker*'s reliance on *Parratt* in dismissing the plaintiff's due process claim.

Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Under § 1983, to establish supervisory liability, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Williams has failed to set forth or show sufficient facts of supervisory indifference to, or tacit authorization of, any misconduct by defendants' subordinates. First, he has not shown that his constitutional rights were violated or that a supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed an unreasonable risk of constitutional injury. Second, Williams' assertions do not demonstrate a pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse").

To the extent that Williams claims that defendants violated their own policy and improperly withdrew funds to recoup the "debt," such a claim does not rise to a constitutional

violation. The adoption of procedural guidelines does not give rise to a liberty interest. Thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *accord Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *accord Kitchen*, 116 F. Supp. 3d at 629 n.6.

To be sure, "indigent inmates must be provided at state expense with paper and pen to draft legal documents . . . and with stamps to mail them." *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977). Although a penal institution cannot deny access to the courts, this fundamental precept does not bar a state from recovery of such costs from inmates who are able to pay.

In my view, the State's effort to recoup its photocopying costs is akin to the recovery of filing fees from a prisoner under certain circumstances, in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. §§ 1915(a), (b); *see also Bruce v. Samuels*, ___ U.S. ___, 136 S. Ct. 627, 632 (2016) (under the PLRA, allowing indigent inmates to bring legal action immediately and correctional institutions to later assess "monthly payments of 20 percent of the preceding month's income"). It is also akin to a penal institution's right to recover postage costs. *See Pearson v. Simms*, 345 F. Supp. 2d 515, 517 (D. Md. 2003) (noting that correctional institutions can issue vouchers to indigent inmates to allow them to send mail subject to repayment at a later date), *aff'd*, 88 F. App'x 639 (4th Cir. 2004); *accord White v. White*, 886 F.2d 721, 727 (4th Cir. 1989) (discussing an instance where an inmate was willing to "sign a voucher against his future earnings to pay for the stamp now").

## IV. Conclusion

For the reasons set forth above, there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law.[5] Summary judgment shall be entered in favor of defendants by separate Order.

July 3, 2018  /s/
Date  Ellen L. Hollander
 United States District Judge

---

[5] In light of the court's ruling, an analysis of the parties' remaining arguments is not necessary.